**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **ANTRELL A. TEEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 17-cv-594-JPG** |
| | ) | |
| **ST. CLAIR COUNTY JAIL,** | ) | |
| **PHILLIPH MCLAUREN,** | ) | |
| **SGT. BOUJACK,** | ) | |
| **SGT. NICHOLS,** | ) | |
| **SGT. MASSEO,** | ) | |
| **SGT. COOK,** | ) | |
| **CAPTAIN KENNY,** | ) | |
| **R. SMITH,** | ) | |
| **M. LAZANTE,** | ) | |
| **ARAMARK,** | ) | |
| **MARY DAVIS,** | ) | |
| **and UNKNOWN PARTY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Antrell Teen, an inmate who is currently incarcerated at St. Clair County Jail ("Jail"), brings this *pro se* action for alleged violations of his constitutional rights under 42 U.S.C. § 1983. (Doc. 1). In connection with these claims, Plaintiff names 11 known defendants and 2 unknown defendants. Plaintiff requests monetary compensation and declaratory and injunctive relief. (Doc. 1, p. 7). This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a

1

defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.*

As a part of screening, the Court is also allowed to sever unrelated claims against different defendants into separate lawsuits. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In *George*, the Seventh Circuit emphasized that the practice of severance is important, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *Id.* This practice is encouraged. The Seventh Circuit Court of Appeals has recently warned district courts not to allow inmates "to flout the rules for joining claims and defendants, *see* FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). *See also Wheeler v. Talbot*, -- F. App'x --, 2017 WL 2417889 (7th Cir. 2017) (district court should have severed unrelated and improperly joined claims or dismissed one of them). Consistent with *George*, *Owens*, and *Wheeler*, unrelated claims will be severed into new cases, given new case numbers, and assessed separate filing fees.

### The Complaint

In his Complaint (Doc. 1), Plaintiff makes the following allegations related to the grievance procedure, various conditions of confinement at the Jail, and the mistreatment of his medical issues.

## A.    Grievance Procedure

"Inmates should have a process that allows all complaints to be heard and responded to." (Doc. 1, p. 3).  In the Jail, captain complaints and requests that are submitted are never returned. *Id.*  Complaints have been directed at Nichols, Masseo, Boujack, Kenny, and McLauren without any response.  *Id.*  "The grievance procedure is broken in St. Clair County Jail" and "[w]ithout a grievance procedure, issues are never handled and staff are not held accountable for their actions."  *Id.*  In fact, Mike Rispera, Mosley, and Jermain have bragged captain complaints don't do anything."  *Id.*

## B.    Inadequate and Unsanitary Food

Aramark, the food service provider at the Jail, "puts inmates at risk with unsanitary, low quality, insufficient portions with inadequate nutritional value.  These issues have been complained about for years and St. Clair County Jail hasn't done anything.  Instead, St. Clair County continues to use Aramark to save money, cut costs, intentionally and knowing putting inmates at risk."  (Doc. 1, p. 3).  Mary Robinson Davis supervises Aramark, and Philliph McLauren approves it.  *Id.*

On January 31, 2016, Plaintiff received a food tray during "chow time" that had black-eyed peas in which maggots were found.  (Doc. 1, p. 4).  Plaintiff wrote a captain complaint and gave it to C/O Jermain.  *Id.*  Plaintiff also wrote a sick call form and gave it to the nurse because he was ill, vomiting, and had stomach pains.  *Id.*  He was never seen by medical, nor did he receive a response to his captain complaint.  *Id.*  Davis is responsible for food distributed from the kitchen.  *Id.*

## C.    Unsafe Water

On February 18-19, 2016, St. Clair County had a boil order in effect.  *Id.*  Plaintiff was

not notified that the water was unsafe to drink, and he did not receive fresh water until the last day of the boil order after he complained. *Id.* There were no announcements made or signs placed instructing inmates not to drink the water. *Id.* Plaintiff put in sick call forms to the nurse on February 18 for nausea, headaches, diarrhea, and vomiting, but he was never seen by medical. *Id.* Plaintiff asked C.O. Riley Rilo about procedures during boil orders, but he was unresponsive. *Id.* Plaintiff believes the supervisors and administrators on duty at the time are at fault for knowing of the boil order and not acting. *Id.*

On February 2, 2017, there was another boil order in effect for St. Clair County. Plaintiff was not notified that the water was unsafe to drink. *Id.* Plaintiff became aware of the order while watching the news. *Id.* At that point, he began to complain, and requested bottled water from Nurse Barbara, though she denied his request. *Id.* C.O. Smith then told Plaintiff that the water was safe to drink, but Plaintiff requested to speak to a supervisor. *Id.* C.O. Green then came on the intercom and told inmates not to drink the water. *Id.* Fresh water was later brought to Plaintiff's cell block. *Id.* Plaintiff's "medical issues were not treated." *Id.*

### D. *Access to Law Library*

Plaintiff was denied access to the law library February through April and June through July 2016, and again from February to May 2017. (Doc. 1, p. 5). During these times, Plaintiff submitted multiple captain complaints and only received a response from Captain Kenny, which stated: "Out of good faith we allow detainees to use the library but it is up to the shift supervisor if they allow you to go or not." *Id.* In February 2017, Plaintiff gave requests to Nichols, and in May, he gave a complaint to Masseo. *Id.*

From January to April 2016, "preparation for trial was paramount," and "while being denied access to the law library, [Plaintiff] couldn't properly educate [himself] on how to address

speedy trial violation issues, ineffective assistance of counsel, and violation of due process." *Id.* From June to July 2016, in being denied access to the law library, Plaintiff was prevented from raising post-trial motions regarding biased jurors, "non-IPI issues," and post-conviction issues. *Id.* "From February through May 2017, denial [from] the law library hindered [Plaintiff] from prosecuting [his] conviction." *Id.* C.O. Fordsom also refused to make copies of legal documents, and when Plaintiff addressed the issues in front of Boujack, nothing was done. *Id.* Further, "C.O. Everest refused to fill out *in forma pauperis*," and assistance filing legal documents is minimal at the Jail. *Id.*

**E.** **Dental Care**

During Plaintiff's initial medical screening in December 2015, Plaintiff informed the nurse about several teeth that were causing him severe pain and preventing him from eating. *Id.* He was not treated by a professional until December 2016, and in the meantime, Plaintiff was given aspirin for the pain. *Id.* Plaintiff submitted multiple captain complaints and more than 20 sick calls during this time. *Id.*

**F.** **Unsecured Cell Locks**

For 10 months, Plaintiff was housed in cell block G and H. (Doc. 1, p. 6). The individual cell doors did not lock during this time, so at night, inmates roamed free. *Id.* This rendered Plaintiff's environment unsafe, and on several occasions, Plaintiff had to defend himself and his belongings. *Id.* One such incident left Plaintiff physically injured. *Id.* Multiple inmates were seriously injured in late night fights. *Id.* Plaintiff complained about these conditions multiple times, but nothing was done. *Id.* C.O. Lazante was given captain complaints on the issue, and Sgt. Cook was informed. *Id.*

## G.    *Paint and Mold*

While Plaintiff was housed in the AA and AB cell blocks, he encountered peeling paint and mold in the showers.  *Id.*  While Plaintiff showered, paint and mold particles became air born.  *Id.*  "Inhaled exposure to these identified and unidentified particles causes injury now and later."  *Id.*  On February 6, 2016, while Plaintiff showered on AA block, particles flew into his eye.  *Id.*  He asked the nurse for help, and he was told to fill out a sick call.  *Id.*  Plaintiff did so, but he was never seen by medical.  Nichols was informed of this issue.  *Id.*

## H.    *Exposure to Staph Infection*

On April 26, 2017, Plaintiff "wrote complaints to the supervisors and medical about an inmate . . . who had been seeking medical attention but not helped."  *Id.*  This inmate had huge boils, but he "refused to lock down."  *Id.*  Boujack came to inspect this inmate's staph infection but put the inmate back in his cell.  *Id.*  Later, the inmate was bandaged and given antibiotics.  *Id.*  On May 11, 2017, the inmate was moved to the infirmary.  *Id.*  Plaintiff "should not have been exposed to these harmful conditions."  *Id.*

## I.    *Medical Staff Negligence*

The medical staff at the Jail is "negligent."  (Doc. 1, p. 3).  "Inmates put sick-call requests in on the kiosk and are not treated."  *Id.*  The nurse in charge of medical requests denies and delays treatment for inmates, which causes Plaintiff's medical needs to go unattended.  "This negligence is routine and a pattern."  *Id.*

## Discussion

Based on the allegations of the Complaint, the Court finds it convenient to designate 11 counts in this *pro se* action.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

**Count 1 –** Due process and/or First Amendment claim against defendants for failing to provide Plaintiff with access to an adequate grievance procedure.

**Count 2 –** Unconstitutional conditions of confinement claim against Aramark, Davis, and McLauren for failing to provide adequate nutrition for inmates in the meals provided at the Jail.

**Count 3 –** Unconstitutional conditions of confinement claim against Davis for subjecting Plaintiff to health risks from maggot-infested black-eyed peas at the Jail.

**Count 4 –** Unconstitutional conditions of confinement claim against unspecified parties for subjecting Plaintiff to health risks from water under a boil order at the Jail in February 2016.

**Count 5 –** Unconstitutional conditions of confinement claim against Smith for subjecting Plaintiff to health risks from water under a boil order at the Jail in February 2017.

**Count 6 –** First Amendment denial of access to the courts claims against Kenny, Masseo, Nichols, and Boujak for denying Plaintiff access to the law library and other related legal services.

**Count 7 –** Deliberate indifference to medical needs claim against unspecified parties for failing to provide adequate dental care to Plaintiff after he complained of several painful teeth in December 2015.

**Count 8 –** Unconstitutional conditions of confinement claim against Lazante and Cook for subjecting Plaintiff to an unsafe environment for 10 months wherein the cell doors in cell blocks G and H failed to function and lock properly.

**Count 9 –** Unconstitutional conditions of confinement claim against Nichols for subjecting Plaintiff to health risks from mold and peeling paint in the showers at the Jail.

**Count 10 –** Unconstitutional conditions of confinement claim against Boujack for failing to move an inmate with a staph infection out of the general population, thereby allowing Plaintiff to be exposed to the infection.

**Count 11 –** Deliberate indifference to medical needs claim against Jail medical staff for a pattern and routine of negligence toward inmate medical needs.

To the extent Plaintiff sought to bring claims against individuals or entities not included in the case caption, these individuals or entities will not be treated as defendants in this case, and

any claims against them should be considered dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (defendants must be "specif[ied] in the caption"). Individuals mentioned in the Complaint but not included in the case caption or list of defendants include: Mike Rispera, Mosley, Riley Rilo, Nurse Barbara, C.O. Green, C.O. Fordsom, and C.O. Everest. Further, any claims not addressed herein should be considered dismissed without prejudice from this action.

That being said, Plaintiff has brought several distinct sets of claims against different defendants. These claims do not belong together in a single action. Therefore, the Court will exercise its discretion and sever unrelated claims against different defendants into separate cases. *George,* 507 F.3d at 607. As an initial note, Plaintiff's allegations regarding the grievance procedure and the pattern of medical negligence, designated as Counts 1 and 11, respectively, do not work to unite all of his relevant claims.

Generally, a prison official's mishandling of grievances states no claim where the official "otherwise did not cause or participate in the underlying conduct." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The mishandling of grievances by a prison official, more specifically, does not give rise to a First Amendment claim for the denial of access to the courts. The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies before filing a suit in federal court. 42 U.S.C. § 1997e(a). However, administrative remedies are considered to be unavailable under the PLRA when prison officials fail to respond to a prisoner's grievances. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (citations omitted). In addition, "exhaustion is not required when the prison officials responsible for providing grievance forms

refuse to give a prisoner the forms necessary to file an administrative grievance." *Hill v. Snyder*, 817 F.3d 1037, 1041 (7th Cir. 2016). A plaintiff who can demonstrate the unavailability of administrative remedies is relieved from the obligation to exhaust administrative remedies and can proceed with his or her suit. *Lewis*, 300 F.3d at 833.

The Complaint fails to state a viable claim against any of the defendants for disregarding Plaintiff's grievances and/or failing to copy Plaintiff's grievances to the extent his claims seek to implicate the defendants for denying him access to an effective grievance procedure. Further, Plaintiff's access to the courts could not have been impeded by the alleged actions, as the unavailability of administrative remedies, as explained above, is no bar to potential litigants bringing their claims. Count 1 shall therefore be dismissed with prejudice as frivolous.

Plaintiff's allegations regarding a pattern of medical negligence by the medical staff at the Jail associated with Count 11 also fail to unite his claims. First, a defendant can never be held liable under § 1983 for mere negligence. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995). Further, if we consider Plaintiff's medical negligence claim one instead alleging deliberate indifference, the fact that Section 1983 creates a cause of action based on personal liability and predicated upon fault acts to defeat his claim. Generally, "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (internal quotations and citations omitted). In order to sufficiently plead a claim for deliberate indifference to serious medical needs, a plaintiff must include facts to show that a specific prison official knew about the plaintiff's serious medical condition, but failed to take steps to mitigate the harm to the plaintiff from that condition. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

Here, the allegations connected with Count 11, as presently pled, contain no such factual recitation, but instead rely on vague or conclusory statements such as: "Inmates put sick-call requests in on the kiosk and are not treated." (Doc. 1, p. 3). These generalities are inadequate to meet the pleading standards outlined in *Twombly* and *Iqbal*. *Twombly*, 550 U.S. at 557, 570; *Iqbal*, 556 U.S. at 678; *see also Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Plaintiff claims that "the medical staff" and "the nurse in charge of the kiosk medical request" deny and delay inmates treatment, which causes Plaintiff's "medical needs to go unattended." (Doc. 1, p. 3). This description is inadequate to pin any potentially unconstitutional actions on any of the specifically named defendants, for lack of clarity as to what medical needs were inadequately addressed, and for lack of specificity as to what individual or entity he seeks to implicate for the alleged deprivations.

In fact, as to the defendants designated as "Unknown Party" in CM-ECF, Plaintiff has entirely failed to specify which nurse in his Complaint, of the several he appears to mention, he considers to be the "Jane Doe" he designates in his list of defendants. In fact, the designation "Jane Doe" cannot be found in the statement of claim at all. Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a)(2). Because Jane Doe, if she were to eventually be identified, would not know which claims in the Complaint are directed against her, she will be dismissed from this action. For similar reasons, "St. Clair County Jail Medical Staff" will also be dismissed. To state a § 1983 claim against an individual or entity, Plaintiff must specifically identify them, by name or Doe designation. He has instead attempted to implicate an amorphous collection of unnamed individuals in connection with his allegations in Count 11,

which is insufficient to state a claim. For these reasons, Count 11 will be dismissed without prejudice for failure to state a claim upon which relief may be granted. Jane Doe and St. Clair County Medical Staff, collectively referred to as "Unknown Party" in CM-ECF, will also be dismissed.

St. Clair County Jail is also named as a defendant but shall be dismissed from this action. A jail is not a "person" under § 1983. *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012); *Powell v. Cook Cnty. Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993). It is not a legal entity in the first place and is therefore not amenable to suit. But even if the proper legal entity was named instead, the case law under § 1983 imposes additional hurdles to actions against governmental agencies that Plaintiff has not cleared. *See, e.g.*, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Accordingly, the Jail shall be dismissed with prejudice from this case.

Now, consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever the claims related to the boil orders issued at the Jail, Counts 4 and 5, into a separate action; Counts 6, 9, and 10, related to law library access and certain alleged unsanitary conditions of Plaintiff's confinement, into another separate action; and Count 8, relating to safety issues in the Jail, into yet another action.[1] These separate actions, for Counts 4 and 5, Counts 6, 9, and 10, and Count 8, will have newly assigned case numbers, and they shall be assessed filing fees. The severed cases shall undergo preliminary review pursuant to § 1915A after the new case numbers and judge assignments have been made.

Counts 2, 3, and 7 shall not be severed. They receive preliminary review below.

---

[1] The Court notes that Count 4, which is being severed into a separate case along with Count 5, does not appear to be associated with any specific defendants at this time. It will therefore likely be dismissed from the newly severed cases unless Plaintiff amends and identifies the defendants he intends to be associated with it. If he so amends, and it becomes clear that Count 4 is severable from Count 5, it may yet again be severed into a separate action.

## Count 2 – Inadequate Nutrition

At the outset, the Court notes that Plaintiff's constitutional rights, as an apparent pretrial detainee, are derived from the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, which is applicable to convicted prisoners. *See, e.g.*, *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2475 (2015); *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013). In the context of a conditions of confinement claim, a pretrial detainee is entitled to be free from conditions that amount to "punishment," *Bell v. Wolfish*, 441 U.S. 520, 535 (1979), while a convicted prisoner is entitled to be free from conditions that constitute "cruel and unusual punishment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

Although claims brought pursuant to § 1983, when involving detainees, arise under the Fourteenth Amendment and not the Eighth Amendment, *see Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000), the Seventh Circuit has "found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) 'without differentiation.'" *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 845 n.2 (7th Cir. 1999)). In a case involving conditions of confinement in a prison, two elements are required to establish a violation of the Eighth Amendment's cruel and unusual punishments clause. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second requirement is a subjective element— establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer*, 511 U.S. at 837, 842. Likewise, for 'cruel and unusual punishment' claims brought by a pretrial detainee, the plaintiff

must show that the jail officials knew that the plaintiff was at risk of serious harm, and that they disregarded that risk by failing to reasonably discharge the risk. *Grieveson v. Anderson*, 538 F.3d 763, 771-72, 777-79 (7th Cir. 2008).

A deprivation of a basic human need—food, medical care, sanitation, or physical safety—is necessary to establish the objective component of unconstitutional conditions of confinement claims. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *see also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). Specifically relevant to this case, the Constitution mandates that prison officials provide inmates with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985). Further, the Seventh Circuit has held that seemingly conclusory allegations claiming prison food "is well below nutritional value" or that inmates are served a "nutritionally deficient diet" are enough to satisfy the objective component of a claim for deliberate indifference. *See Smith v. Dart*, 803 F.3d 304, 312 (7th Cir. 2015) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996)).

To survive preliminary review, the Complaint must also satisfy the subjective requirement by suggesting that Aramark, Davis, and McLauren exhibited deliberate indifference to the conditions of Plaintiff's confinement by causing or participating in the alleged constitutional deprivations. *See Pepper*, 430 F.3d at 810. A plaintiff may not attribute any of his constitutional claims to a high-ranking official by relying on the doctrine of respondeat superior, or vicarious liability; "the official must actually have participated in the constitutional wrongdoing." *Antonelli*, 81 F.3d at 1428 (citing *Cygnar v. City of Chicago*, 865 F.2d 827, 947 (7th Cir. 1989)).

Plaintiff's allegations regarding the nutritional value of the food at the Jail satisfy the objective component of this deliberate indifference claim based on the reasoning in *Dart* and *Antonelli*. However, the Court finds that the subjective component of this claim is not satisfied as to the defendants associated with it. McLauren is only mentioned in conjunction with this claim in Plaintiff's assertions that he "is the Superintendent for St. Clair County Jail," is "legally responsible for the daily operation of St. Clair County Jail and for the welfare of all the inmates in that facility," and that Aramark is "approved by" him. (Doc. 1, pp. 2-3). Plaintiff does not allege that he took steps to put McLauren on notice of his objections to the food's nutrition, or that he asked McLauren to address the conditions. Moreover, the Complaint includes no suggestion that McLauren was aware of the conditions that Plaintiff faced.

As to Aramark, it is a corporate entity and is therefore treated as a municipality for purposes of § 1983 liability. *See Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002). "[T]o maintain a § 1983 claim against a municipality, [a plaintiff] must establish the requisite culpability (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002). Here, Plaintiff has not alleged any concrete policy or custom on the part of Aramark concerning service of a diet lacking in nutrition at the Jail, nor has he alleged that the food he was served at the Jail was served due to a policy directive by Aramark.

Finally, as to Davis, the relevant allegations against her are limited to the fact that she is a food service supervisor at the Jail, that she supervises Aramark, and that she is "responsible for food distributed from the kitchen." (Doc. 1, pp. 2-4). These allegations are incredibly vague. Though she may be "responsible" for the food, Plaintiff has failed to allege that Davis was aware

of nutritional issues associated with it or his objections to it, or that he requested she take steps to remedy the food in any way.

Because Plaintiff has failed to satisfy the subjective component of his deliberate indifference claim designated as Count 2, this claim does not survive screening under § 1915A and shall be dismissed without prejudice.

## Count 3 – Contaminated Food

Contaminated food may pose a serious risk to an inmate's health. Although one spoiled or contaminated meal will usually not deprive an inmate of basic nutritional needs, it may compromise his health and result in unnecessary pain and suffering. *Chavis v. Fairman*, 51 F.3d 275, *3 (7th Cir. 1995) ("Unlike the persistent provision of inedible meals, occasional service of spoiled food cannot be said to deprive inmates of basic nutritional needs."). For purposes of this screening order, the Court will assume, without deciding, that the objective component of Plaintiff's conditions of confinement claim based on maggots in his food is satisfied.

The subjective component of the claim is not. The allegations do not suggest that Davis, the only named defendant associated with the contaminated food allegations, exhibited deliberate indifference to Plaintiff. He describes a single incident in which he was served food in which maggots were found. This Court has dismissed a similar claim at screening as frivolous and for failure to state a claim upon which relief may be granted. *See, e.g.*, *Perez v. Sullivan*, 100 F. App'x 564, *2 (7th Cir. 2004) (dismissing Eighth Amendment claim brought by inmate who became very ill after ingesting spoiled milk on one occasion as frivolous). The Seventh Circuit upheld the decision. *Id.*

In contrast to an isolated incident, multiple occurrences of food contamination may give rise to a deliberate indifference claim against prison officials. Repeated instances of food

contamination suggest a possible systemic problem in the handling and preparation of food. Allegations of subsequent occurrences could plausibly suggest that prison officials knew of and disregarded an excessive risk posed to inmate health by the contaminated food. The same cannot be said of a single episode where there is no prior notice of problems with food contamination. *See also McRoy v. Aramark Correctional Servs., Inc.*, 268 F. App'x 479 (7th Cir. 2008) (no deliberate indifference where inmate notified guard that his undercooked chicken was "bloody" on one occasion, his milk smelled "sour" and tasted "terrible" on six occasions, and his sandwich meat was spoiled on three occasions, where inmate offered a replacement when available, staff retrained on proper food handling, and no further incidents occurred). Even here, where plaintiff notified officials after the fact via a captain complaint and sick call request, he makes no claim that they already knew that the black-eyed peas contained maggots or that the food was handled or prepared improperly. He also makes no claim that Davis was aware of the issue, only that she "is responsible for food distributed from the kitchen." (Doc. 1, p. 4).

At most, Plaintiff describes negligence on the part of those prison officials who served him contaminated food, which may or may not include Davis. But negligence, or even gross negligence, does not violate the Eighth Amendment. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995). Plaintiff provides no indication that Davis was aware of a serious risk posed by the contaminated food. He mentions no subsequent episodes, and instead attaches a captain complaint to his Complaint referencing "new trays," "clean coolers," "food now cooked to specific specifications," and "no black eyed peas since [the] incident," implying measures were taken to remedy the situation after the isolated incident. (Doc. 1, p. 13). This was, by all indications, a one-time occurrence and, at most, negligence. *Id.* The Eighth Amendment claim in Count 3 shall therefore be dismissed without prejudice for

failure to state a claim upon which relief may be granted.

## Count 7 – Dental Care

A prisoner raising a claim against a prison official for deliberate indifference to the prisoner's serious medical needs must satisfy two requirements. The first requirement compels the prisoner to satisfy an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious[.]'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The second requirement involves a subjective standard: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that amounts to "'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 297).

Plaintiff claims that during his initial medical screening, he informed "the nurse" about certain issues he was having with his teeth. (Doc. 1, p. 5). Whether Plaintiff's dental issues may be considered objectively serious, or someone was deliberately indifferent to them, Plaintiff has failed to associate any named defendants with this claim. The only person he alleges was involved at all was "the nurse" he informed of his condition in 2015, but it is unclear if this nurse is the "Jane Doe" nurse Plaintiff has included in his list of defendants, and it is also unclear the extent of the nurse's involvement given the allegations. Because there are no defendants associated with this claim at this point, it will be dismissed without prejudice.

## Injunctive Relief

Plaintiff has requested in his request for relief "a preliminary and permanent injunction ordering the defendants to rectify the grievance procedure, the sick call procedure, and law library procedure." (Doc. 1, p. 7). A preliminary injunction is issued only after the adverse party is given notice and an opportunity to oppose the motion. *See* Fed. R. Civ. P. 65(a)(1). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits,

that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). *See also Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999).

Plaintiff has not filed a separate motion for a preliminary injunction. Plaintiff has also not demonstrated or alleged that he faces any immediate or irreparable injury or loss that warrants this drastic form of relief. Further, the Court cannot conclude that he is likely to succeed on the merits of any of the claims remaining in this action, as these counts, as noted herein, are not sufficient to survive threshold review.

Plaintiff has put forth insufficient allegations in support of his request for injunctive relief. Should his situation change during the pending action, necessitating emergency intervention by the Court, Plaintiff may file a new motion for a preliminary injunction pursuant to Rule 65(a). At this time, Plaintiff's request for a preliminary injunction shall be **DENIED** without prejudice.

## **Pending Motions**

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3), which is hereby **DENIED** without prejudice. There is no constitutional or statutory right to appointment of counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). Federal District Courts have discretion under 28 U.S.C. § 1915(e)(1) to request counsel to assist pro se litigants. *Id.* When presented with a request to appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear

competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

With regard to the first step of the inquiry, Plaintiff claims that he has written to the ACLU, SLU Law School, American Law Clinic, People's Law Office, and the John Howard Association. (Doc. 3, p. 1). Plaintiff has not attached any documentation of these alleged attempts to obtain counsel, so this Court is not clear on whether Plaintiff has made a reasonable attempt to find counsel.

Assuming he has made a reasonable attempt, concerning the second step of the inquiry, "the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand." *Id.* at 655. In this case, Plaintiff's claims do not appear to be that factually complex. They involve the quality of the food he is served at the Jail, other general conditions of his confinement, an untreated medical condition, and his access to the law library. From a legal standpoint, the litigation of any constitutional claim falls in the complex range. Even so, Plaintiff does not provide any compelling reason as to why he is incapable of litigating his claims at this time, and he has indicated that he is relatively educated, having completed "some college." (Doc. 3, p. 2). Further, Plaintiff's Complaint adequately articulates his claims, though he leaves out some detail, and based on this ability, this Court concludes that Plaintiff appears to be competent to litigate his case on his own at this time. Future developments in this case may alter the Court's decision, but at this early stage in the litigation, Plaintiff's motion for appointment of counsel will be **DENIED** without prejudice. Plaintiff may choose to re-file this motion at a later stage in the litigation in this case or in any of the cases severed from this action.

### Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** is dismissed with prejudice as frivolous.

**IT IS FURTHER ORDERED** that **COUNTS 2**, **3**, **7**, and **11** are dismissed without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNTS 4** and **5,** which are unrelated to the other claims in this action, are **SEVERED** into a new case against **SMITH**.

**IT IS FURTHER ORDERED** that **COUNTS 6**, **9** and **10**, which are unrelated to the other claims in this action, are **SEVERED** into a new case against **KENNY** (Count 6)**, MASSEO** (Count 6), **NICHOLS** (Counts 6 and 9), and **BOUJACK** (Counts 6 and 10).

**IT IS FURTHER ORDERED** that **COUNT 8**, which is unrelated to the other claims in this action, is **SEVERED** into a new case against **LAZANTE** and **COOK**.

The claims in the newly severed cases shall be subject to screening pursuant to 28 U.S.C. § 1915A after the new case number and judge assignment is made. In the new cases, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;
- The Complaint (Doc. 1);
- Plaintiff's motion to proceed *in forma pauperis* (Doc. 2); and
- Plaintiff's trust fund account statement (Doc. 10).

Plaintiff **will be responsible for an additional $350 filing fee** in each newly severed case.[2] No service shall be ordered in the severed cases until the § 1915A review is completed.

**IT IS FURTHER ORDERED** that the ***only claims remaining in this action, though they are each being dismissed herein, are Counts 1, 2, 3, 7, and 11***.

**IT IS FURTHER ORDERED** that Defendants **SMITH**, **KENNY, MASSEO**, **NICHOLS**, **BOUJACK**, **LAZANTE**, **COOK**, **ST. CLAIR COUNTY JAIL,** and **ST. CLAIR COUNTY JAIL MEDICAL STAFF** are **TERMINATED** from **this** action with prejudice.

---

[2] Pursuant to 28 U.S.C. § 1914, effective May 1, 2013, an additional $50.00 administrative fee is also to be assessed in all civil actions, unless pauper status is granted.

**IT IS FURTHER ORDERED** that Defendants **MCLAUREN**, **ARAMARK**, **DAVIS**, and **JANE DOE** are **DISMISSED** from this action without prejudice.

Because both Jane Doe and St. Clair County Jail are being dismissed from this action, the **CLERK** is **DIRECTED** to **TERMINATE** "Unknown Party" as a defendant in CM-ECF.

**IT IS FURTHER ORDERED** that Plaintiff has leave to amend his Complaint in *this* action, if he wishes to assert any new facts or claims against **MCLAUREN**, **ARAMARK**, **DAVIS**, and **JANE DOE**. Within 28 days of this Order **September 22, 2017**, Plaintiff may file a First Amended Complaint. He must list *this* case number, *i.e.*, No. 17-cv-594-JPG, on the first page of each pleading and label the document "First Amended Complaint." Plaintiff is strongly encouraged to use this District's standard civil rights complaint form when preparing his First Amended Complaint. Further, Plaintiff should only bring *related* claims against *common* defendants. Any claims found to be unrelated to one another and/or against different groups of defendants will be severed into one or more new cases at the Court's discretion, and Plaintiff will be assessed a separate filing fee in each case. If Plaintiff chooses not to file a First Amended Complaint or fails to comply with the deadline and/or instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute his claims. FED. R. APP. P. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2). Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g). The **CLERK** is **DIRECTED** to provide Plaintiff with a blank civil rights complaint form for use in preparing the First Amended Complaint.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 25, 2017**

*s/J. Phil Gilbert*
**U.S. District Judge**